## BOGGS' ADM'RS v. THE BR. BANK AT MOBILE.

1. A judgment obtained against one administrator by motion, which is so irregular that it is afterwards set aside on his motion, is not evidence of a presentment of the claim to the personal representative, so as to prevent the bar of the statute of non-claim.

2. A certificate made by a notary public, that he had given the parties to the bill notice of its dishonor, must be made at the time, and as a part of the protest. Such a certificate, made four and a half years after the date of the protest, is not proof of notice.

3. The first indorser of a bill, whose liability had not been fixed by the holder, cannot by notice of its dishonor, charge a subsequent indorser, whose liability had been discharged by the laches of the holder.

Error to the Circuit Court of Perry.

The estate of Josiah N. Boggs having been declared insolvent, the Branch Bank presented two claims against the estate, which were rejected by the commissioner appointed to act for the judge of the orphans' court of Perry, who was incompetent to sit, and thereupon the bank obtained a *certiorari* removing the proceedings into the circuit court. From the record of the orphans' court it appears, that the claims of the

bank consisted of a promissory note, dated 1st May, 1839, for $8690 14, due nine months after date, and a bill of exchange for $3,850, dated 13th December, 1838, and due ninety days after date, upon which the intestate was the second indorser.

To establish a presentment of the note within eighteen months after the grant of letters of administration, the bank produced a transcript of the record of the circuit court of Mobile, showing that a judgment had been obtained against the representatives of the intestate, by motion, the notice for which issued on 1st September, 1841, which judgment was set aside by one of the administrators, who qualified on the 3d September, 1841, and upon his affidavit. It also appeared that the administrator had been served with notice ,of the motion on the 14th October, 1841.

To prove notice of the protest, and non-payment of the bill of exchange, to the intestate, the bank introduced a protest made by a notary public of the city of New Orleans, and dated the 16th March, 1839.

Upon the protest was the following indorsement, dated 17th October, 1845 :

I, Hilary B. Cenas, a notary public in and for the parish of New Orleans, State of Louisiana, residing in the city of New Orleans, duly commissioned and sworn, do certify, that on the day of the date of this protest, I notified the drawer, and all the indorsers of the draft, hereunto attached, of the written protest of the same for non-payment, by notices in writing and print, by me signed with the same date of said protest, and which I inclosed in the one for A. Armstrong, cashier, directed to him at Mobile, Ala., and on the same day I deposited said notices in the post office in this city, in time to go by the first mail thereafter. In testimony whereof, &c.

To prove that the notice referred to in this certificate was forwarded to the intestate, directed to his proper post office, and in due time, the bank read the deposition of F. H. T. Gaines, that on the 18th March, 1839, he deposited in the post office at Mobile, notices of protest for J. N. Boggs, indorser, notifying him of the protest of J. W. Henley's bill of exchange, drawn on, and accepted by F. W. Gaylord & Co. of New Orleans, for the sum of $3,850, dated 13th Decem-

ber, 1836, due 16th March, 1839; said notice being directed to said Boggs at Marion, Perry county, Ala. The bank further proved that this was the proper post office.

The circuit court considered, that the orphans' court erred in rejecting these claims, reversed its judgment, and remanded the cause. From this judgment this writ is prosecuted.

The error assigned is the judgment of the circuit court.

HUGH DAVIS and JOHN ERWIN, for plaintiff in error.
JOHN, with whom was PECK, contra.

ORMOND, J.—In our opinion the circuit court erred in its judgment upon both the claims rejected by the commissioners sitting for the judge of the orphans' court.

We will first consider the question arising upon the plea of the statute of *non claim*, interposed by the administrators to the allowance of the note as a demand against the estate.

It is not pretended that there was an actual presentation of the note to the administrators, *in pais*, but it is insisted, that an irregular suit by notice, which the bank commenced upon the note, against the administrators, and which, at the instance of one of the administrators was set aside, at the same term at which it was rendered, is a substitute for, and equivalent to, an actual presentment.

In the case of Jones' Ex'rs v. Lightfoot, at the present term, we had occasion to consider this question, and we then held, that knowlege by the personal representative of the existence of the claim, no matter how full, or accurate it might be, would not dispense with a presentation of the claim. Yet there are doubtless acts, which are precisely equivalent in their effects, to a presentation of a claim in *pais*. In Garrow v. Carpenter & Hanrick, 1 Porter, 359, a suit had been brought by Garrow v. Hale; during its progress Hale died, and the suit was revived against his administrators, and it was continued several terms, for an award. Subsequently the administrator declared the estate of Hale insolvent, and under the law then in existence, abated the suit. A bill in equity being afterwards exhibited by Garrow, against them, they pleaded the statute of *non claim*, but the court held, that there had been a presentment by the proceedings in the pre-

vious suit.   It is inferrable, that the suit was waived before the statute had operated a bar, and we are clear in the opinion, that this was in law a presentment of the claim, the effect of which could not be destroyed by the act of the administrators in abating the suit.

In the case before us, the bank caused a notice to be issued which was served on one of the administrators, that it would move for judgment on the note, and a judgment was in fact obtained against him on the note, together with other persons. This judgment was set aside at the same term, at the instance of the administrator against whom it was rendered, and no further step was taken, or presentment made, until after the expiration of eighteen months from the grant of the letters of administration.

If this can be considered a presentment of the claim, it must be in virtue of the notice served upon one of the administrators, or of the judgment obtained against him, which, whilst it was in force, was evidence of a presentment.   The latter having been vacated, no presumption arises of the existence of the facts which authorize its rendition.   For all such purposes it is as if it never had existed.

Was the notice, which must have contained a substantial copy of the note, that the bank would move for judgment upon it, a sufficient presentment to the administrators?

There can be no doubt, that the service of a writ upon the personal representative, or the revival of a suit by *scire facias*, within the eighteen months allowed by the statute for presentment of the claim, would be a compliance with the statute, as it respects that suit, and the notice given by the bank is a substitute for the writ at common law.   The question then arises, what effect will such a notice have upon a subsequent suit.   In Bigger v. Hutchings & Smith, 2 Stew. 448, this precise question arose and was determined.   There, a writ had been sued out against the administrator within eighteen months after grant of letters, and a *non-suit* suffered. After the eighteen months had elapsed, another suit was brought, to which the administrator pleaded the statute of *non-claim*, and the plea was sustained by this court.

The principle of this case is, that the service of a writ, is not evidence of a presentment, except in that particular case,

In Garrow v. Carpenter & Hanrick, previously adverted to, a distinction was engrafted upon this case, that if the first suit was abated by the act of the personal representative, he was thereby precluded from setting up the statute in a subsequent suit.   In the last case it is also to be observed, the administrator had consented to a reference of the first suit, and had continued the cause for several terms.   With this exception, we are not aware that the case of Bigger v. Hutchings & Smith, has ever been questioned, and we are not able to perceive any sensible distinction between that case and the present.   There the plaintiff abandoned the pursuit of his claim. Here it is true he obtained a judgment by default, but which was so irregular that it was vacated on motion, and in both, no further step was taken until the bar created by the statute was complete.

The literal interpretation of this statute, is, doubtless, that the "presentment of the claim," shall be made to the personal representative in *pais*, by the party beneficially interested in it.   When this statute is collated with other statutes in *pari materia*, the reason of its enactment is obvious.   It was to enable those interested in the estate, to call on the personal representative at the end of eighteen months, to distribute it, unless he could give satisfactory reasons for retaining it in his hands.   This he is able to do, when claims are presented to him, which is evidence not only of their existence, but an assertion that they will be enforced against the estate.   We have seen in the preceding part of this opinion, that a suit against the administrator is equivalent in legal estimation to an actual presentment of the claim, as it respects that particular suit; but if it is abandoned, or as in this case, is so irregular that it is vacated, and is not renewed, it affords no evidence that the claim is insisted on, and therefore offers no obstacle to the distribution of the estate.

This is, in our opinion, the true test to apply to the statute, as it was evidently designed to provide a perfect bar, for the benefit of creditors or distributees.   [Thrash v. Sumwalt, 5 Ala. R. 20.]

The result of this examination is, that as the bank produced no evidence of a presentment in fact, or of any thing

which in legal estimation was an equivalent act, the claim was properly rejected by the commissioners.

We come now to the consideration of the question, whether there was sufficient evidence of notice to the intestate, as the indorser of the bill of exchange, of its dishonor.

The bill was payable in New Orleans, and negotiated at the Branch Bank at Mobile, by which it was indorsed to the City Bank of New Orleans, and by the latter protested at maturity, as to all the parties to the bill, and notices as alledged sent on the day of the protest, to all the parties, by mail, to the cashier of the Branch Bank at Mobile, by which notice was given by the next mail to the intestate, addressed to him at his place of residence.    These facts, if made out by the proof, are sufficient to charge the intestate, as indorser, and the only question is as to the sufficiency of the proof.

We consider the evidence very satisfactory, that on the 18th March, 1839, two days after the protest, and dishonor of the bill, a notice was put in the mail at Mobile, addressed to the intestate at his place of residence, informing him of the protest and dishonor of the bill, but this is clearly insufficient without other proof.    A notice by the City Bank of New Orleans, or by the notary direct to the intestate, on the day of the dishonor of the bill, would doubtless have been sufficient to charge him, but that was not the course adopted. The City Bank of New Orleans, as the holder of the bill, might have given notice to the Bank of Mobile, which appears as the last indorser, who could then notify either, or all of the previous parties upon the bill, and the question now to be considered is, whether such notice was given to the Bank at Mobile.

The only evidence produced that such notice was given, is a certificate made by Mr. Cenas, the notary public, four and a half years after the date of the protest.

The power conferred on the notary by the act of the legislature, Clay's Dig. 380, § 9, to certify the fact, that he had given notice to the parties on the bill of its dishonor, is a power which did not exist at common law, and must therefore be exercised in the mode pointed out by the statute. The power conferred is to certify the fact of notice, as a part of the protest, and when the protest is made and completed,

his power is at an end. The attempt here to prove the existence of a fact, four and a half years after it transpired, by his certificate; instead of taking his deposition, is entirely unauthorized by the act in question. It is an act entirely independent of the protest, and is therefore not legal evidence of the fact it purports to establish. This point was expressly determined in Whitman & Hubbard v. Farmers' Bank of Chattahoochie, 8 Porter, 258.

There being then no evidence, that the liability of the Bank at Mobile was fixed by due notice, the notice given by the bank to the intestate as a prior indorser, is of no avail, as it does not appear that its liability was fixed, by due notice. This discharges the liability of all the antecedent parties to the bill, they not having been notified by the holder. [Byles on Bills, 164; Turner v. Leach, 4 B. & A. 451; Sherrod v. Rhodes, 5 Ala. 690.]

The City Bank of New Orleans appears on the record as the holder of the bill, when it was protested for non-payment. It May be, that the Bank at Mobile merely indorsed it to the City Bank, for the purpose of collection, and that the latter was merely the agent of the former. In such a case, it would seem that it was only necessary for the agent to return the bill with the protest to the holder, who could fix the liability of the other parties by a seasonable notice. [Foster v. McDonald, 3 Ala. R. 35, and cases there cited.] But we need not pursue this subject further, as the Bank at Mobile appears on the record as the last indorser, and if it has since become the holder, by an unauthorized payment to the City Bank of New Orleans, when its liability was not fixed by due notice, that will not enable it to recover of a prior party to the bill, discharged by the laches of the holder, at the time of the dishonor of the bill.

The judgment of the circuit court must be reversed, the effect of which is to affirm the judgment of the orphans' court rejecting these claims.

COLLIER, C. J.—This case, in my opinion, bears a more

striking analogy to Garrow v. Carpenter & Hanrick, than to Bigger v. Hutchins & Smith; consequently I think the presentation of the claim to the administrators was sufficient. In other respects I concur in the opinion of the court.