H. L. Roan, as Administrator of Mary Jernigan, Deceased, Appellant, vs. Geo. M. Holmes et al., Appellees.

DOWER—DAMAGES FOR DETENTION OF—FROM WHAT TIME ACCRUES— SUIT FOR DAMAGES FOR DETENTION OF, AS AGAINST HUSBAND'S ALIENEE, DOES NOT SURVIVE TO ADMINISTRATOR OF WIDOW—WHEN DEFEATED BY WIFE'S MORTGAGE OF.

1. Where the wife joins with her husband in the execution of a mortgage upon land in which she has an inchoate right of dower, and in such mortgage releases her dower therein, such release is not absolute, but is *conditional* only; and under section 3, p. 765, McClellan's Digest (Section 1982, Revised Statutes), she can not be divested of her right by means of such conditional release thereof in said mortgage except in the same way that the absolute fee of the husband could be divested by means of such mortgage, viz: by sale under decree of foreclosure thereof.

2. Where land is sold during the lifetime of the husband at forced sale to satisfy a judgment against him, the purchaser at such sale acquires the same status, so far as the wife's right to dower in such land is concerned, as though he were the alienee of the husband by his own voluntary act and deed.

3. Mesne profits by way of damages for the detention of the widow's dower, if recoverable at all against the *alienee* of the husband, can only be recovered *from the time of her demand* for her dower interest and refusal thereof by the alienee.

4. Where land has been aliened in the lifetime of the husband, and the widow dies pending her suit for the admeasurement of dower therein, but before any adjudication of her contested right thereto, her administrator can not proceed with the suit, as against the alienee of the husband, for the sole purpose of recovering mesne profits as damages for the detention of such dower. Damages in such cases is an incident to the principal right, and falls, on the death of the widow, at the termination of the principal demand.

Appeal from the Circuit Court for Orange county.

The facts of the case are stated in the opinion of the court.

*William H. Jewell* for Appellant.

*C. F. Akers* for Appellees.

TAYLOR, J. :

On the 18th of July, 1888, Mary Jernigan filed her bill in equity in the Circuit Court of Orange county against George M. Holmes, John C. Slocum, Alex. R. Hargraves and M. F. Hargraves, in which she alleged that she was the widow of Isaac Jernigan, deceased, who formerly resided in Orange county, Florida, and who died there on the 22nd of October, A. D. 1886, intestate, leaving no real or personal estate. That during her said coverture her said husband, the said Isaac, was seized in fee of that parcel of land in Orange county, Florida, described as being the southeast quarter of section 10, Township 23 S., R. 29 E., containing 160 acres. That she has never during her coverture or since conveyed, aliened or released her dower interest in said land, but that the said defendants, she is informed, are in possession thereof claiming title thereto, and that they refuse to let her in possession with them, or to pay her her part of the rents and profits of said land accruing to her since her husband's death, according to her said dower interest. The bill prays that one-third in value of said land be assigned to her as dower, and for one-third of the mesne profits of said land from and since the decease of her said husband, and for general relief.

The defendants answered the bill on the first of October, 1888, and admit that Isaac Jernigan died intestate at the date alleged in the bill, and that he did not

have any property, real or personal, at his death. The answer neither admits nor denies the marriage and coverture of the complainant with the said Isaac, but demands strict proof thereof.

Isaac Jernigan's former seizin and possession of the land in controversy is admitted. The answer alleges, as a bar to the recovery of dower in the premises, that the said Isaac Jernigan on the 9th of April, A. D. 1856, executed and delivered to one Arthur Ginn a mortgage thereon to secure a note for $182, in the execution of which mortgage the said Mary Jernigan joined with her husband, conveying her right of dower and all title she had in said land as appears from the records of said county. That subsequently to the execution and delivery of this mortgage, to-wit: on the first of March, 1858, the said land was levied upon and sold by the sheriff of said county under a judgment and execution in the Circuit Court of said county in favor of Madison Post, and against Isaac Jernigan, and that at this sheriff's sale the mortgagee, Arthur Ginn, became the purchaser and took a sheriff's deed thereto at such sale. That in said mortgage the complainant released and conveyed her dower; and that neither the said Isaac Jernigan, nor the complainant, nor any one else for them, have ever paid said mortgage, or redeemed, or offered to redeem the said land from said mortgage. That the said Arthur Ginn after purchasing said land at said sheriff's sale, at once went into possesion thereof, and afterwards sold and conveyed the same to the defendant, George M. Holmes, who has since sold and conveyed 40 acres thereof to the defendant Slocum, and 40 acres to one Roberson, who also conveyed it to Slocum, and 40 acres to Hargraves.

The answer alleges that the land at the time of its pur-
chase by Arthur Ginn at the sheriff's sale was wild and
unimproved, and of but little value and without income
or rental value. That since defendants have purchased
same they have enhanced its value greatly by building
thereon and planting thereon orange groves.   The an-
swer expressly denies that said lands have ever yield-
ed any profits, but, on the contrary, avers that more
money has been expended every year on said lands
than they have received therefrom.   The answer also
alleges that since the filing of her bill the said com-
plainant has died, and that whatever right of dower or
of mesne profits she might have been entitled to if liv-
ing, all such rights have ceased and determined by her
death.

After the filing of the defendant's answer, to-wit:
on the 5th of November, 1888, Henry L. Roan, as ad-
ministrator of the estate of the said Mary Jernigan,
filed his amended bill in said cause alleging therein
that the said Mary Jernigan had died on the 27th of
September, 1888, and prayed that said suit instituted
by her before her death might proceed for the recov-
ery of the mesne profits from said lands from the death
of Mary's husband, Isaac Jernigan, on October 22nd,
1886, to the time of the death of the said Mary on Sep-
tember 27th, 1888, for the benefit of her estate.   To
this amended bill the defendant interposed a plea in
bar alleging that with the death of the said Mary all
claim to mesne profits ceased and determined.   At the
hearing upon the bill, answer, amended bill and plea
thereto, the parties admitted the seizin and possession
of Isaac Jernigan during coverture with the said Mary,
his wife, the sale of the land by the sheriff and the
sheriff's conveyance to Arthur Ginn; and the possession
of the lands by the defendants since Isaac Jernigan's

death, and the death of the complainant, Mary, since the institution of the suit, and it was further agreed that the cause should be submitted upon the issue: whether or not the claimant is barred of her dower interest by the mortgage of Isaac. Jernigan to Arthur Ginn, attached as an exhibit to the defendant's answer, or by the sale of said land under execution against the said Isaac, or by the death of the dowress since bringing her suit or by all of said facts combined. At said final hearing upon the issues thus presented it was adjudged that the defendants' plea to the amended bill be sustained, and that the bill be dismissed. From this decree H. L. Roan, as administrator, appeals.

The answer attempts to set up as a complete bar to the widow's dower the mortgage executed by her conjointly with her husband in 1856. There is no allegation in the answer that this mortgage was ever foreclosed, or that there was ever any sale of the mortgaged premises or of the wife's dower right thereunder. The only averment being that it was never paid, and that no redemption or offer of redemption therefrom had ever been made. The contention of the defendants is, that the mortgagors' equity of redemption being purchased at the sheriff's sale under the judgment and execution by the mortgagee, that the equitable title conveyed by the mortgage and the legal title thereby became merged in the mortgagee and was tantamount to a foreclosure of the mortgage. There may be some foundation for this contention in so far as the title of the husband, Isaac Jernigan, was concerned, but this can not affect the widow or her right to dower. She was no party to the judgment at law against her husband under which *his* equity of redemption was sold; and the sheriff in selling under such judgment could not, and did not pretend to,

dispose of *her* inchoate right to dower; and, so far as the pleadings show, there has been no foreclosure or sale of her dower right, nor any adjudged forfeiture of it in any form. Our statute (sec. 3, p. 765, McClellan's Digest, sec. 1982, Rev. Stat.) provides: "That a mortgage is, and shall be held in our courts, a specific lien on property therein for a specific object, and in point of fact as well as law, the mortgagee is incapable of acquiring possession until after a decree of foreclosure, and then only by bidding and out-bidding all competitors in market." Mary Jernigan's right of dower was not *absolutely* released or conveyed in consequence of her joining in the mortgage, but was *conditionally* released only, and when her right ripened from an inchoate to an absolute one on the death of her husband, she then became clothed with the right to the possession and enjoyment of the corpus of her interest, and could not be divested of it by the mortgagee or anyone else *by virtue of any mortgage* that she had executed upon such interest, except by a sale thereof under decree of foreclosure. The right of the wife to dower is a legal right, and the title thereto when complete on the husband's death is a legal title; and when the right in its inchoate state during the life of the husband is *mortgaged* by the wife, it can, under this statute, be divested, *by means of such mortgage*, only in the same way that the absolute fee of the husband could be divested thereby, *viz*: by sale under decree of foreclosure thereof.

In Berlack vs. Halle, 22 Fla., 236, this court, passing upon this statute, have said that a mortgage is a specific lien on the land it covers, and, a failure to comply with its conditions does not divest the mortgagor of the legal title, nor vest it in the mortgagee. McMahon vs. Russell, 17 Fla., 698. Mary Jernigan

occupied the position here of mortgagor of her dower interest, a failure on her part, or on her husband's part, to comply with the conditions of the mortgage did not divest her of such interest, nor vest it in the mortgagee; and the sale of her husband's equity of redemption in the fee under the judgment and execution against *him* did not carry with it *her* equity of redemption of her dower estate therein. The mortgage urged as a bar to her recovery of dower was made in 1856, her husband did not die until 1886. Her bill for dower was filed in 1888, thirty-two years after the execution of the mortgage. During that time no steps appear to have been taken to foreclosure or enforce such mortgage as against either her husband or herself. Under these circumstances, when such mortgage is set up as a bar to her bill in equity to have her dower assigned, the presumption, from the lapse of time. would run in her favor that such mortgage had been satisfied. instead of in favor of the theory that her dower estate therein conditionally released, had merged in the mortgagee on his purchase of the *husband's equity* under another judgment against the husband alone, to which she was no party. Under these circumstances we think that she was entitled to dower in the lands, notwithstanding the conditional relinquishment thereof in the mortgage. Had the mortgage been alive, unaffected by the statute of limitations at the time of her application for admeasurement of dower, then, where the mortgage debt, as here, was not for purchase money of the premises, she would have taken dower subject to its equitable proportion of the lien of such mortgage, or else she could have been held to a proportionate redemption by payment of one third part of the mortgage debt be-

fore having her dower assigned. McMahon vs. Russell, *supra*.

The demandant here died before any assignment of her dower and before any adjudication of her right thereto, and within a few months after the institution of her suit to have her right determined and the dower assigned. Her original bill prayed, not only for an admeasurement of dower in the land, but for mesne profits *from the death of her husband*, which occurred two years before the filing of her bill. After her death her administrator, by amended bill, admits the termination of the right to dower in the land, but insists upon proceeding with the suit for the recovery of the mesne profits accruing between the deaths of the husband and that of the widow. It was admitted at the hearing that the land was aliened during the lifetime of the husband; not voluntarily by the husband, but by the sheriff's sale under judgment and execution against him, which gave to the purchaser at such sale, so far as the wife's dower was concerned, the same status as though he had been the alienee of the husband by his own voluntary act and deed. McClanahan vs. Porter, 10 Mo., 746. There is no allegation in the bill or amended bill that there was any *demand* made upon the defendants by the widow for her dower interest at any time prior to the institution of her suit. Under these circumstances, the land out of which dower is sought having been *aliened* during the lifetime of the husband, and no demand having been made by the widow upon his alienees until the filing of her bill for the assignment of dower, nearly two years after the death of the husband, was she entitled to mesne profits by way of damages for the detention of her dower *from the death of her husband?* While there is con-

flict in the authorities, the preponderance of them seem to agree that where the lands have been aliened in the lifetime of the husband, the widow can *in equity* recover mesne profits by way of damages for the detention of her dower as against the alienee, but can recover such damages *only from the time of her demand* for dower and refusal thereof by the alienee. McClanahan vs. Porter, *supra*; Chiswell vs. Morris, 14 N. J. (Eq.), 101; Tod vs. Baylor, 4 Leigh (Va.) 537; Sellman vs. Bowen, 8 Gill & Johnson (Md.), 50; Steiger's Admr. vs. Hillen, 5 Gill & Johnson, 121; Francis vs. Garrard, 18 Ala., 794; 2 Scribner on Dower, p. 709 (sec. 20, Ch. 25). As there was no demand made in this case prior to the filing of the bill, damages or mesne profits, if recoverable at all, could not have been recovered by the widow, had she lived, as against the husband's alienees, except from the time of the filing of her bill. Her administrator certainly cannot be allowed to recover more. The widow having died in this case within two or three months after the filing of her bill for dower, and before any adjudication of her right that was earnestly contested, the question arises: can her administrator proceed with the suit, begun against the husband's alienees by her, for the sole purpose of recovering mesne profits or damages that may have accrued between the time of the filing of her bill and her death? There seems to be conflict, too, in the authorities here, but we are satisfied that the weight of the decided cases in point preponderate in favor of a *negative* answer to the question. Johnson vs. Thomas, 2 Paige Chy., 377; Turney vs. Smith, 14 Ill., 242; Miller vs. Woodman, 14 Ohio, 518; Conklin vs. Bush, 8 Pa. St., 514; Kiddall vs. Trimble, 1 Md. Chy., 142. The land here having been aliened in the lifetime of the husband, and the widow having died

pending her s :it for the admeasurment of dower, but before any adjudication of her contested right thereto, as against her husband's alienees, her administrator can not proceed with the suit for the sole purpose of recovering mesne profits as damages. The damages in such cases is an incident to the principal right and falls on the death of the widow at the termination of the principal demand.

The decree appealed from is affired.